**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff,**

           **v.**                       **CIVIL NO.** 08-337 (FAB)

JORGE A. DE CASTRO-FONT [1],

    **Defendant.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Before the Court are the motions filed by the United States Probation Office ("U.S. Probation Office") regarding alleged violations of the conditions of release imposed on Jorge De Castro-Font ("De Castro").  (See Docket Nos. 239 & 289.)  Having considered those motions and the evidence presented at a hearing on the matter, the Court **REVOKES** De Castro's pre-sentencing release and **ORDERS** him detained until the sentencing hearing scheduled for May 17, 2011.

**I.   Procedural Background**

    On January 21, 2009, De Castro reached an agreement with the government and pled guilty to all counts of the indictment filed against him.  (Docket No. 173.)  Following his guilty plea, De Castro filed a motion for release pending sentencing pursuant to 18 U.S.C. § 3143.  (Docket No. 178.)  After the government indicated that it had no objection to that release, the Court

granted De Castro's motion, ordering De Castro's release subject to the conditions imposed by his initial pretrial release on bond. (Docket Nos. 180 & 181.)[1]

On September 13, 2010, the U.S. Probation Office filed a motion notifying the Court of a potential violation of a condition of De Castro's release and requesting an order for De Castro's arrest and detention pending a hearing on the matter. (Docket No. 210.) The alleged violation involved noncompliance with a restraining order issued by the Commonwealth Court, which required De Castro to refrain from certain contact with Lisandra Delgado. Id. The Court issued an arrest warrant and De Castro was brought before Chief United States Magistrate Judge Justo Arenas for an initial appearance. At the conclusion of that proceeding, Magistrate Judge Arenas ordered De Castro's release on the condition that he be placed under house arrest with electronic monitoring, subject to the full custody of his father, Adolfo De Castro. (Docket No. 213.)

On October 15, 2010, the Court held a bond revocation hearing to determine whether there was probable cause to believe that De Castro violated the restraining order issued by the Commonwealth Court. (Docket No. 226.) Although the Court found probable cause

---

[1] De Castro's ex-wife, Lisandra Delgado, was originally assigned as his third-party custodian for the purposes of pre-sentencing release. (Docket No. 181.) On March 17, 2010, she was removed from that capacity as requested by the government and the U.S. Probation Office. (Docket Nos. 204 & 205.)

based on the evidence presented at that hearing, the Court also found that the conditions of release imposed by Magistrate Judge Arenas were sufficient to prevent De Castro from posing a danger to any other person or the community.  Id.  Accordingly, the Court ordered De Castro's release subject to the amended conditions, pursuant to 18 U.S.C. § 3148(b)(2)(B).  Id.  At the conclusion of that hearing, the Court specifically warned De Castro that "any one violation, however minimal, of the [amended] conditions placed on you will be an automatic revocation of your bail [and] release conditions."  (Docket No. 227 at 169.)

On December 3, 2010, the U.S. Probation Office filed another motion notifying the Court of a potential violation of De Castro's conditions of release and requesting De Castro's arrest and detention pending a hearing to determine whether that violation actually occurred.  (Docket No. 239.)  The Court issued an arrest warrant and ordered De Castro to appear before the Court and show cause why his pre-sentencing release should not be revoked.  (Docket Nos. 240 & 241.)  In the course of De Castro's arrest, he had to be hospitalized, necessitating the continuance of the hearing regarding the alleged violation of the conditions of his pre-sentencing release.  (See Docket No. 242.)  Following De Castro's motion for a psychiatric evaluation, the Court ordered the De Castro to be transferred by the U.S. Marshals to a federal medical facility outside Puerto Rico.  (See Docket Nos. 244 & 248.)

Upon De Castro's return to Puerto Rico, he was placed under arrest pursuant to the Court's order and brought before United States Magistrate Judge Bruce McGiverin for an initial appearance. (Docket Nos. 275 & 285.)  On February 22, 2011, Magistrate Judge McGiverin held a preliminary hearing regarding the revocation of his pre-sentencing release and found probable cause that De Castro violated the conditions of that release.  (Docket No. 291.)  On April 8, 2011, a final revocation hearing was held before the Court.  (Docket No. 330.)

## II.  Factual Background

### A.  Hearsay Issue Raised at Evidentiary Hearing

At the April 8, 2011 hearing, defense counsel raised objections to portions of U.S. Probation Officer Guillermo Montañez's ("Officer Montañez") testimony in which he related certain out-of-court statements made by Delgado, and Andrea De Castro, De Castro's daughter.  Defense counsel contends that prior to admitting any hearsay in a bail revocation hearing, a court must first balance a defendant's interest in their right to confront adverse witnesses against any good cause the government may have for denying that right to confrontation.  (See Docket No. 331 at 2-3.)  Defense counsel relies on United States v. Taveras, 380 F.3d 532, 536 (1st Cir. 2004), which discussed such a requirement while applying Federal Rule of Criminal Procedure 32.1 ("Rule 32.1") to revocation proceedings related to supervised release and probation.

The First Circuit Court of Appeals later clarified in United States v. Rondeau, 430 F.3d 44, 47 (1st Cir. 2005), however, that the confrontation right referred to in Taveras, 380 F.3d at 536, does not stem from the Sixth Amendment, but rather derives from the much more limited terms of Rule 32.1, which entitles a defendant to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."

Although Rule 32.1 only refers to proceedings for revoking or modifying probation or supervised release, De Castro argues that its right to confrontation and the balancing analysis laid out in Taveras and Rondeau should extend to bail revocation proceedings. (See Docket No. 331 at 2-3.) De Castro provides no legal authority, however, for the extension of Rule 32.1 procedural mechanisms to bail revocation proceedings. See id. De Castro's argument is further undermined by the clear terms of the statutes governing release on bail and its revocation. Proceedings to revoke release on bail are governed by 18 U.S.C. § 3148, which specifically refers to the factors and procedural guidelines laid out in 18 U.S.C. § 3142.[2]  Title 18, United States Code, Section 3142 states that a defendant "shall be afforded an opportunity to testify, to present witnesses, to cross-examine

---

[2] Although 18 U.S.C. § 3148 outlines sanctions for persons "released under section 3142," 18 U.S.C. § 3143, the statute pursuant to which De Castro has been released, allows a person's release expressly under the terms of 18 U.S.C. § 3142.

witnesses **who appear at the hearing**, and to present information by proffer or otherwise." 18 U.S.C. 3142(f)(2)(B) (emphasis added). The same provision further states that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." Id.

Nowhere in that statute, nor in First Circuit case law, is there any mention or application of the balancing analysis developed for Rule 32.1 in the context of bail or bail revocation proceedings. In fact, the First Circuit Court of Appeals has recognized that "the government may utilize reliable hearsay at detention hearings." See United States v. Pasciuti, No. 92-1112, 1992 U.S. App. LEXIS 15183 at * 12-13 (1st Cir. March 19, 1992) (citing United States v. Acevedo-Ramos, 755 F.2d 203, 206-07 (1st Cir. 1985)); see also United States v. Hussain, 6 Fed. Appx. 50, 51 n. 2 (1st Cir. 2001) (reiterating the "well-established principle that courts may consider and credit reliable hearsay evidence in making determinations under the Bail Reform Act"). Thus, it appears that as long as the hearsay testimony provided by U.S. Probation Officer is reliable, the Court may consider it in the course of determining whether De Castro violated his conditions of release.

De Castro proffers two arguments regarding the reliability of the contested hearsay evidence offered by the government. (See Docket No. 331.) First, De Castro claims that

the statements by his ex-wife and daughter are unreliable because they are neither written nor sworn.  Id.  Second, De Castro contends that the statement of his ex-wife is even more unreliable given the adversarial nature of their recently-ended marriage.  Id. De Castro supports both arguments with cases that advise generally increased scrutiny of hearsay statements which are unwritten, or come from an adverse party in a defunct romantic relationship, but does not provide any specific circumstances from this case which place the contested hearsay's reliability in question.   Id. Although the hearsay in question is verbal and unsworn, it shares little else in common with the hearsay found to be unreliable in De Castro's supporting legal authority.  De Castro cites to Taveras, 380 F.3d at 537-38, in which the government relied solely on verbal hearsay from a source with whom the testifying U.S. Probation Officer had little previous contact, and United States v. Lloyd, 566 F.3d 341, 346 (3rd Cir. 2009), which involved multiple levels of hearsay and a statement lacking any "indicium of reliability." In this case, however, Officer Montañez testified as to complaints received regarding De Castro's attempts to contact his ex-wife, a continuing situation which he has dealt with numerous times, most notably preceding the last revocation hearing held on October 15, 2010.

        Most importantly, the statements by Delgado and Andrea De Castro related by Officer Montañez are at least partially

corroborated by other evidence presented at the hearing.  Officer
Montañez personally called the phone number from which Delgado
claimed De Castro contacted her and recognized the voice of De
Castro.  Further, Officer Montañez and Deputy Marshal Mendez both
testified that De Castro continued trying to contact Delgado even
after his arrest on December 4, 2010, when he told the arresting
marshals that he wanted to call his father, but in fact gave the
marshals Delgado's phone number and left a message on her
voicemail.  Lastly, De Castro's mental evaluation contains an
admission that he contacted Delgado on December 3, 2010.  (See
Docket No. 300 at 5.)  Given the nature of the hearsay and the
existence of corroborating evidence, the Court finds the contested
statements reliable and considers them in its findings of fact and
legal analysis.

    B.   **Findings of Fact**

        The following findings of fact are taken from the
evidence and testimony presented at the hearing held before the
Court on April 8, 2011.

        On December 3, 2010, Delgado contacted Officer Montañez
and reported that De Castro had been calling her in a harassing
pattern.  She stated that he was calling her from a cell phone
number with which she was not familiar.  After receiving this
information from Delgado, Officer Montañez attempted to call the
phone number she gave him with his duty cell phone, but no one

answered the phone.  Officer Montañez then tried to call the number
again from a different phone, and a voice answered which he
immediately recognized as De Castro.  De Castro pretended not to be
himself and denied having contacted his ex-wife.  After this
conversation, Officer Montañez hung up the phone and proceeded to
call the land line at the apartment where De Castro was residing at
the time.  De Castro answered that line with the same voice Officer
Montañez heard when calling the phone number provided by Delgado,
but quickly changed his voice after Officer Montañez identified
himself as a U.S. Probation Officer.  Officer Montañez put De
Castro on notice that the U.S. Probation Office would be submitting
the information regarding his alleged contact with Delgado to the
Court and ended the call.  Delgado then called Officer Montañez
again to report further phone calls she received from De Castro
using his regular cell phone number.  Officer Montañez also
received further texts from the phone number Delgado originally
provided calling Officer Montañez a "fool" and telling him that he
was "making a show" and to be "calm."

        Officer Montañez then drafted and filed a motion
notifying the Court of De Castro's alleged actions and requesting
his arrest.  After the Court granted the motion and issued an
arrest warrant, Officer Montañez accompanied the U.S. Marshals to
execute the warrant on December 4, 2010.  On the way from the site
of the arrest to the Metropolitan Detention Center ("MDC") in

Guaynabo, De Castro asked the marshals if he could call his father. The marshals allowed the call, and Deputy U.S. Marshal Mendez asked De Castro for his father's phone number and dialed it into his own cell phone, which he then put on speaker.  De Castro then requested that the phone be taken off speaker, but Deputy Marshal Mendez did not.  The call went to the recipient's voicemail and De Castro left a message stating that he had just been arrested, that the marshals were taking him to MDC, and that he would call the recipient back. Shortly after the marshals escorted De Castro into MDC, Officer Montañez discovered that the recipient of the phone call had not been De Castro's father, but rather Delgado.  Officer Montañez retrieved the cell phone that had been used and confirmed that the last phone number dialed had been Delgado's.

On the same day as De Castro's arrest, Officer Montañez received a phone call from De Castro's daughter, Andrea De Castro, who confirmed that her father had been using a pre-paid cell phone to contact Delgado in an intoxicated state.  Following De Castro's arrest, he was sent to Federal Medical Center Devens in Ayer, Massachusetts for a mental evaluation.  During the course of that evaluation, De Castro admitted that he sent a text message to Delgado, as well as called her, on December 3, 2010.

## III. Discussion

### A.   Revocation of Bail

A person who has been released pending sentencing, such as De Castro, and who has violated a condition of his release is subject to revocation of release, an order of detention, and prosecution for contempt of court.  See 18 U.S.C. §§ 3142-3143, 3148(a).  Title 18, United States Code, Section 3148 provides that a court may revoke a person's release if, *inter alia*, the court "finds that there is . . . probable cause to believe that the person has committed a Federal, State, or local crime while on release; . . . and . . . [that] the person is unlikely to abide by any condition or combination of conditions of release."  18 U.S.C. § 3148(b).  The evidence presented at the April 8, 2011, hearing regarding De Castro's contact with his ex-wife on December 3, 2010, in conjunction with the Court's previous examination of De Castro's harassing contact with his ex-wife, leads the Court to conclude that there is probable cause that he contacted Delgado in violation of the terms of the Commonwealth Court's restraining order, which forbade him from "harassing, intimidating, threatening or, in any other way, interfering with [Delgado]."  Doing so constitutes a crime under Puerto Rico law, thus satisfying the first condition for revoking De Castro's pre-sentencing release.  See 18 U.S.C. § 3148(b).

If the incident alleged to have occurred on December 3, 2010, were an isolated event, De Castro might have been able to persuade the Court, as he did at the last revocation hearing, that a condition or combination of conditions could prevent him from endangering any other person or the community, thus allowing his continued pre-sentencing release.  This is, however, the fourth time the U.S. Probation Office has had to file a motion requesting the revocation of De Castro's release under the Bail Reform Act and the second time that the Court has had to address the specific issue of De Castro's noncompliance with the Commonwealth Court's restraining order issued in favor of his former wife.  The Court concluded at the last revocation hearing that there was probable cause that De Castro had violated the restraining order and warned De Castro in no uncertain terms that **any** further violation would result in his detention.  Given the evidence presented at the hearing, it appears that De Castro has little respect for any court order and a demonstrated unwillingness to "abide by any condition or combination of conditions of release" set by the Court.  See 18 U.S.C. § 3148(b)(2)(B).  That finding along with the determination that there is probable cause to believe that De Castro has violated the restraining order in effect on December 3, 2010, mandates the revocation of De Castro's pre-sentencing release and his detention pending the sentencing hearing currently scheduled for May 17, 2011.

## IV.  Conclusion

For the reasons discussed above, the Court hereby **REVOKES** De Castro's release and **ORDERS** him detained pending the sentencing hearing scheduled for May 17, 2011.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 13, 2011.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
United States District Judge